**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARA PADILLA, | Civil Action No.: 10-cv-4968 (ES) |
| Plaintiff, | **OPINION** |
| v. | |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**SALAS, District Judge**

Before the Court is an appeal filed by Mara Padilla ("Claimant" or "Ms. Padilla") seeking review of the Administrative Law Judge's ("ALJ") decision that denied Claimant's application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. The Court has considered the submissions in support of and in opposition to the present application, and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, the Court vacates the ALJ's judgment and will remand this matter to the Commissioner of Social Security ("Commissioner") for further proceedings consistent with this Court's Opinion.

### I.      Background and Procedural History

On October 17, 2007, Claimant applied for SSI benefits alleging disability due to hypertension, sleep apnea, arthritis, gout, high cholesterol, depression, and asthma since

November 13, 2002. (R. at 48, 121-24, 156).[1]  Ms. Padilla's application for SSI benefits was initially denied on May 15, 2008, and denied upon reconsideration on August 13, 2008. (Cl. Moving Br. at 8-9; R. at 50-60).

On August 18, 2008, Claimant requested a hearing before an ALJ. (*Id.* at 2). Claimant's request was granted and a hearing was held on November 5, 2009 before ALJ James Andres. (*See* R. at 27-47). On November 12, 2009, the ALJ issued a decision which found that Ms. Padilla was not disabled under the Social Security Act. As a result, the ALJ denied Claimant's request for benefits. (*Id.* at 15-22).

On January 15, 2010, Ms. Padilla filed a Request for Review with the Appeals Council of the Office of Disability Adjudication and Review seeking review of the ALJ's November 12, 2009 decision. (*Id.* at 219-21). On August 26, 2010, the Appeals Council denied Ms. Padilla's request. (*Id.* at 1-7).

On October 6, 2010, Ms. Padilla filed a complaint with the United States District Court for the District of New Jersey. The Court received the Administrative Record on January 13, 2011. (*See* Docket Entry No. 12). The matter is now ripe for this Court's adjudication.

## II.   Relevant Medical Records

### A.   Treating Physician—Arlene Hallegado, M.D.

Dr. Hallegado has been Ms. Padilla's treating physician since approximately April 2007. (Cl. Moving Br. at 2). On August 30, 2007, Dr. Hallegado examined Ms. Padilla. Dr. Hallegado's notes indicate that Ms. Padilla had been treated at Clara Maass Medical Center Emergency Room on August 29, 2010 for acute pain in her left ankle and foot. (R. at 327). Dr. Hallegado's examination revealed that Ms. Padilla's left ankle was swollen, red, and tender.

---

[1] The Court uses the initial "R." to refer to the Administrative Record.

(*Ibid.*).   In addition, Dr. Hallegado indicated that Claimant complained of pain in the epigastric/right upper quadrant area and that a physical examination revealed tenderness in this area.  (*Ibid.*).  As a result, Dr. Hallegado prescribed medication and indicated additional testing was required to determine whether Claimant had gastritis and acute cholecystitis.  (*Ibid.*).

### B.        Physical Examinations

#### 1.        Physical Consultative Examination—Rhambhai C. Patel, M.D.

On April 24, 2008, Dr. Patel examined Ms. Padilla.  Dr. Patel's records indicate that Ms. Padilla claimed disability due to hypertension; sleep apnea; arthritis in both of her hands, ankles, and hip joints; and depression.  (*Id.* at 282-83).  Dr. Patel noted that Ms. Padilla experiences shortness of breath when she walks one mile and when she climbs one flight of stairs.  (*Id.* at 282).  In addition, the pain from her arthritis "gets worse [when] standing more than six hours or walking [for] approximately six hours."  (*Ibid.*).  During this examination, Dr. Patel described Ms. Padilla as not appearing to be "in acute distress . . . , and was walking without any [ ] device with a normal gait."  (*Id.* at 283).  Furthermore, neither of her hands were swollen and her grip was normal.  (*Id.* at 284).  Dr. Patel also noted that Ms. Padilla's cognitive function and memory were intact.  (*Ibid.*).

#### 2.        Physical Residual Functional Capacity Assessment—Kopel Burk, M.D.

Dr. Burk completed a Physical Residual Functional Capacity Assessment on May 1, 2008.  In analyzing the entirety of Ms. Padilla's file, Dr. Burk determined that Ms. Padilla could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour day, sit (with normal breaks) for a total of about 6 hours in an 8-hour work day and push and/or pull for an

unlimited amount of time over the course of an 8-hour workday.[2]  (*Id.* at 287).  Dr. Burk noted that Ms. Padilla prepares some meals, does light housekeeping chores, can walk a mile, and shops.  (*Id.* at 288).

Dr. Burk next assessed Ms. Padilla's postural limitations.  In doing so, Dr. Burke found that Claimant could "occasionally" climb a ramp or stairs, stoop, kneel, crouch, and crawl. (*Ibid.*).  However, Dr. Burk indicated that Ms. Padilla was to "avoid concentrated exposure" to extreme cold, extreme heat, fumes, odors, dusts, gasses, and poor ventilation.  (*Id.* at 290).

Dr. Burk noted that Ms. Padilla's hypertension was well controlled, there was no evidence of gout, her range of motion was good, and that there was no evidence of deformity or swelling in her joints.  (*Id.* at 291).

### C.    Psychological Examinations

#### 1.    Mental Status Examination—Paul F. Fulford, Ph.D.

On April 30, 2008, Dr. Fulford conducted a mental status examination on Ms. Padilla. Dr. Fulford found Ms. Padilla to be dressed in an age appropriate manner with adequate grooming and hygiene.  (*Id.* at 295).  Dr. Fulford further found that Claimant exhibited normal speech and possessed good mental control. (*Ibid.*).   Although Claimant's judgment was determined intact, her abstract thinking was limited and concentration and short-term memory were impaired. (*Ibid.*).   Dr. Fulford indicated that Claimant's affect was "somewhat flat, suggestive of possible underlying depression."  (*Id.* at 296).

---

[2] "Frequently means occurring one-third to two-thirds of an 8-hour workday, . . . [while] occasionally means occurring from very little to one-third of an 8-hour workday." (*Id.* at 286).

### 2.      Psychiatric Review & Mental Residual Functional Capacity Assessment—Wayne Tillman, Ph.D.

On May 15, 2008, Dr. Tillman conducted a psychiatric review of Ms. Padilla.  Dr. Tillman determined that Claimant's impairment did not meet the criteria for an Affective Disorder.  (*Id.* at 301-14).  As a result of Claimant's psychiatric review, Dr. Tillman completed a Mental Residual Functional Capacity Assessment ("MRFCA").

The MRFCA is separated into three sections.  Section I, titled "Summary Conclusions," records the examining physician's summary conclusions that are derived from evidence in the file.  (*Id.* at 315).  This section is divided into four distinct categories: (A) Understanding and Memory; (B) Sustained Concentration and Persistence; (C) Social Interaction; and (D) Adaptation.  (*Id.* at 315-16).   Under each category is a series of statements (*e.g.*, "The ability to remember locations and work-like procedures"), and linked to these statements is what can best be described as a series of boxes identifying the degrees of limitation (*i.e.*, "Not Significantly Limited, Moderately Limited, and Markedly Limited").   The boxes provide the examining physician the ability to make his/her findings, at least initially, in a conclusory fashion by simply checking the box identifying the appropriate degree of limitation.  (*See ibid.*).  Section III, titled "Functional Capacity Assessment," allows the examining physician to elaborate on the preceding sections to "[i]nclude any information which clarifies a limitation or function."  (*Id.* at 317).

In Section I of the MRFCA, Dr. Tillman determined that Ms. Padilla was "not significantly limited" to: (1) remember locations and work-like procedures; (2) understand and remember very short and simple instructions; (3) carry out very short and simple instructions; (4) sustain an ordinary routine without special supervision; (5) work in coordination with or proximity to others without being distracted by them; (6) make simple work related decisions;

(7) interact appropriately with the general public; (8) ask simple questions or request assistance; (9) get along with coworkers or peers; (10) maintain socially appropriate behavior; and (11) respond appropriately to changes in the work setting.  (*Id.* at 316).   Dr. Tillman further determined that Ms. Padilla was "moderately limited" in the areas of: (1) understanding and remembering detailed instructions; (2) carrying out those instructions; (3) maintaining attention and concentration for extended periods of time; (4) performing scheduled activities and maintaining regular and punctual attendance within customary tolerances; (5) completing a normal workday and workweek without interruptions from her psychological limitations and performing at a consistent pace with reasonable periods of rest; and (6) accepting instructions and responding appropriately to criticism from superiors.  (*Id.* at 315-16).

In Section III, Dr. Tillman elaborated on his Section I conclusions.  Specifically, Dr. Tillman explained that Ms. Padilla "is able to understand and execute simple instructions and can with some difficulty execute four-step instructions."  (*Id.* at 317).  Dr. Tillman further explained that Ms. Padilla can, with some difficulty, maintain attention, concentration and attendance standards; relate adequately with others in the workplace; and adapt to changes in the workplace. (*Ibid.*).

## III.    Legal Standards

### A.      Standard for Awarding Benefits

To qualify for Social Security benefits, the claimant must first establish that she is "disabled."  42 U.S.C. § 1381.  "Under the Social Security Act, a disability is established where the claimant demonstrates that there is some medically determinable basis for an impairment that prevents [her] from engaging in any substantial gainful activity for a statutory twelve-month period."  *Fargnoli v. Halter*, 247 F.3d 34, 38-39 (3d Cir. 2001) (internal citations and quotations

omitted).   A claimant is disabled for these purposes only if her physical or mental impairments are "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

The Social Security Administration has established the following five-step, sequential evaluation process to determine whether an individual is disabled:

> (i) At step one, the Commissioner must determine whether the claimant is currently engaging in any substantial gainful activity. If a claimant has not engaged in substantial gainful activity, the Commissioner turns to step two of the analysis.
>
> (ii) At step two, the Commissioner considers whether the claimant's impairment or combination of impairments is (or are) severe.  If the impairment is not severe, the claimant is not disabled and the evaluation ends.  If, however, the claimant has a severe impairment, the analysis proceeds to step three of the evaluative process.
>
> (iii) At step three, the Commissioner must decide whether the claimant suffers from a listed impairment.  If the claimant meets a listed impairment, she is disabled.  If the claimant does not suffer from a listed impairment, or its equivalent, then the analysis proceeds to step four.
>
> (iv) Before considering step four, the Commissioner must first determine the claimant's residual functional capacity.  At step four, the Commissioner determines whether based on claimant's residual functional capacity she can still do her past relevant work. If the claimant has the residual functional capacity to perform her last work, she is not disabled.  If she is unable to do any past relevant work, the analysis proceeds to the step five.
>
> (v) At step five, the Commissioner must determine whether the claimant is able to do any other work in the national economy, considering her residual functional capacity, age, education, and work experience.  If the Commissioner cannot show that work exists, then the claimant is entitled to disability benefits.

20 C.F.R. § 404.1520(a)(4).

- 7 -

### B.    Burden of Proof

The five-step sequential evaluation process involves a shifting burden of proof.  *See Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983).  At step one, the claimant has the burden of establishing that she has not engaged in "substantial gainful activity" since the onset of the alleged disability, and at step two that she suffers from a "severe impairment" or "combination of impairments."  20 C.F.R. § 404.1520(a)-(c).   If the claimant is able to demonstrate both that she has not engaged in substantial gainful activity and that she suffers from a severe impairment, then the claimant must then demonstrate—at step three—that her impairments are equal to or exceed one of the impairments listed in Appendix 1 of the regulations.  20 C.F.R. § 404.1520(d).  If she is able to make this showing then she is presumed disabled.  If she cannot show that she meets or exceeds a listed impairment, then at step four she must show that her residual functional capacity does not permit her to return to her previous work.  20 C.F.R. § 404.1520(e).   If the claimant meets this burden, then at step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other substantial gainful work.  20 C.F.R. § 404.1520(g).  If the Commissioner cannot meet this burden then the claimant shall receive disability benefits.

### C.    Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405 (g).  The Court must affirm the Commissioner's decision if it is "supported by substantial evidence."  42 U.S.C. §§ 405(g) and 1383(c)(3); *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).  Substantial evidence is more than a "mere scintilla" of evidence and "means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In reviewing the ALJ's decision, where there is conflicting evidence, the ALJ "must adequately explain his reasons for rejecting or discrediting competent evidence." *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing *Brewster v. Heckler*, 786 F.2d 581 (3d Cir. 1986)). Also, the Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Thus, this Court is limited in its review in that it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (internal citation omitted).

## IV.    The ALJ's Findings and Final Determination

At step one, the ALJ found that Ms. Padilla "has not engaged in substantial gainful activity since October 17, 2007, the day she applied for disability benefits." (R. at 17).

At step two of the analysis the ALJ determined that the Claimant has the following severe impairments: hypertension, arthritis, gout, obesity, and depression. (*Ibid.*).

At step three, the ALJ found that the Claimant "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (*Ibid.*).

As part of the step-four analysis, the ALJ determined that the Claimant retained the residual functional capacity "for lifting and carrying objects weighing up to 20 pounds; frequently lifting and carrying objects weighing up to 10 pounds. However, the [C]laimant is precluded from climbing ladders, ropes or scaffolds, [and] must avoid concentrated exposure to extreme cold, heat fumes, and hazards." (*Id.* at 21).

The ALJ next determined, as part of his step-four analysis, that Ms. Padilla possessed the mental residual functional capacity to do simple and unskilled jobs.  (*Id.* at 19).  The ALJ found Dr. Tillman's MRFCA compelling, particularly noting that "[C]laimant could perform activities of daily living, was able to understand and execute simple instructions and despite some difficulty could execute four-step instructions, relate adequately with others in the work place [sic] and adapt to chage[s] in the work place [sic]."  (*Id.* at 20).

At step four, the ALJ recognized that "[g]iven the Claimant's current residual functional capacity for less than the full range of light work, the [C]laimant is unable to perform past relevant work."  (*Id.* at 21).  Thus, the ALJ proceeded to step five and determined that "considering the [C]laimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [C]laimant can perform."  (*Ibid.*).  Consequently, the ALJ concluded that Ms. Padilla was not disabled within the meaning of the Social Security Act.  (*Id.* at 22).

## V.     Issues Ms. Padilla Raises on Appeal

On appeal, Ms. Padilla argues that the ALJ's decision contains the following deficiencies: (1) at step three, the ALJ did not meaningfully consider the effect of Ms. Padilla's obesity in combination with her other impairments when determining medical equivalency to a listed impairment (Cl. Moving Br. at 33-38); (2) the ALJ's residual functional capacity determination is not a complete and accurate reflection of Ms. Padilla's mental limitations (*id.* at 15-23); and (3) the ALJ's reliance on SSR 85-15 in lieu of vocation testimony was improper and fails to satisfy the Commissioner's burden at step five.  (*Id.* at 26-30).  Conversely, the government contends that the Commissioner's decision must be affirmed because it "is supported by

substantial evidence and is based upon the correct application of legal standards.  (Def. Opp. Br. at 1).  Below, the Court addresses each alleged deficiency in turn.

## VI.    Analysis: Review of the ALJ's Determination

### A.    Step Three: The ALJ's Consideration of Obesity

The Court first determines whether the ALJ's analysis at step three was proper. Specifically, the Court is tasked with determining whether the ALJ combined Ms. Padilla's obesity with her other impairments to determine whether the combined effect was medically equivalent in severity to one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

"[A]n ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, . . . at step three and at every subsequent step."  *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009); *Johnson v. Comm'r of Soc. Sec.*, No. 07-3433, 2008 U.S. Dist. LEXIS 52089, at *18 (D.N.J. July 9, 2008) ("Social Security Regulation 02-1P, 2002 SSR LEXIS 1, provides that [an ALJ] must consider whether obesity alone or in combination with other impairments meets any of the listed impairments in step three.").  Consideration requires more than simply stating conclusions of ultimate findings or using boiler-plate language.  *Wallace*, 722 F.2d at 1155 n.8 (internal citation omitted).  The Third Circuit requires an ALJ to "set forth the reasons for his decision."  *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (citing *Cotter v. Harris*, 642 F.2d 700, 704-05 (3d Cir. 1981)). Specifically, the "ALJ must provide a 'discussion of the evidence' and an 'explanation of reasoning' for his conclusion [which] is sufficient to enable meaningful judicial review."  *Diaz*, 577 F.3d at 504 (citing *Burnett*, 220 F.3d at 120); *see also Centeno v. Comm'r of Soc. Sec.*, No. 09-6023, 2010 U.S. Dist. LEXIS 128306, at *10, 11 (D.N.J. Dec. 6, 2010) ("Specifically, the

- 11 -

ALJ must provide a discussion of the evidence and an explanation of her conclusion sufficient to enable meaningful judicial review.") (internal citation and quotation omitted).  The ALJ is not required to employ particular "magic" words: "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis."  *Jones v. Barhnart*, 364 F.3d 501, 505 (3d Cir. 2004).  However, absent an analysis of the cumulative impact of a claimant's obesity coupled with her other impairments, "we are at aloss [sic] in our reviewing function."  *Diaz*, 577 F.3d at 504.  For that reason, courts will often vacate the ALJ's decision and remand the matter to the Commissioner for additional explanation and reasoning.  *See e.g.*, *Diaz*, 577 F.3d at 505 ("We must vacate and remand here as well.  Surely the ALJ, having recognized obesity as an impairment, should determine . . . whether, and to what extent, Diaz's obesity, in combination with her asthma, diabetes, arthritis, back pain, and hypertension, impacted her workplace performance."); *Burnett*, 220 F.3d at 119-20 ("Because we have no way to review the ALJ's . . . inadequate step-three ruling, we will vacate and remand the case for a discussion of the evidence and an explanation of reasoning supporting a determination that Burnett's 'severe' impairment does not meet or is not equivalent to a listed impairment."); *Centeno*, 2010 U.S. Dist. LEXIS 128306, at *13 ("[W]e will remand so that the Commissioner may more fully discuss to what extent Plaintiff's obesity in combination with her other impairments impacted her workplace performance.").

Ms. Padilla argues that the ALJ's discussion of obesity is deficient.  Specifically, Ms. Padilla contends that "the ALJ's statement that he considered obesity, without discussion of any evidence, let alone his reasons for rejecting it, falls short of the standards dictated in the SSA's own regulations and policy statements as well as Third Circuit law . . . ."  (Cl. Moving Br. at 38).

The Court finds that Ms. Padilla's argument has merit.  Here, the ALJ's entire obesity analysis consists of the following:

> [t]he undersigned has evaluated the impairment herein pursuant to the extensive and detailed guidelines set forth in SSR 02-1p, including the references in the listings contained in sections 1.00Q, 3.00I, and 4.00F . . . .   Accordingly, the undersigned has fully considered obesity in the context of the overall record evidence in making this decision.

(R. at 18).

This analysis suffers three flaws.  First, the Court cannot determine whether the ALJ meaningfully considered the combined effect of Claimant's obesity with two of the listed severe impairments—arthritis[3] (Listing 14.09) and depression (Listing 12.04).[4]  To that end, the Court cannot determine whether the combined effect of Claimant's impairments would be medically equivalent to an Appendix 1 listing.  Second, the ALJ's analysis is inadequate because it is conclusory and does not set forth the reasons for his decision.  *See Burnett*, 220 F.3d at 119 (the Third Circuit "requires [an] ALJ to set forth the reasons for his decision") (citing *Cotter v. Harris*, 642 F.2d 700, 704-05 (3d Cir. 1981)); *Torres*, 279 F. App'x 149, at 152 (3d Cir. 2008) ("This Court requires the ALJ to set forth the reasons for his decisions."); *Centeno*, 2010 U.S. Dist. LEXIS 128306, at *10, 11 ("the ALJ must provide a discussion of the evidence and an explanation of her conclusion sufficient to enable meaningful judicial review").  Finally, the ALJ's conclusory analysis does not allow for meaningful judicial review.  *See Burnett*, 220 F.3d at 119 (stating that an ALJ's "conclusory" one-sentence step-three analysis was "beyond

---

[3] "The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone."  SSR 02-1p, 2002 SSR LEXIS 1, at *17.

[4] "Obesity may also cause or contribute to mental impairments such as depression. The effects of obesity may be subtle, such as the loss of mental clarity and slowed reactions that may result from obesity-related sleep apnea." SSR 02-1p, 2002 SSR LEXIS 1, at *7.

- 13 -

meaningful judicial review"); *Torres*, 279 F. App'x at 152 ("conclusory statements, like the one in this case, have been found to be beyond judicial review").

For these reasons, this Court's reviewing function is constrained. Therefore, the Court will remand this matter to the Commissioner for further development of the record and an analysis that is consistent with the requirements mandated by the Third Circuit.

**B.    Step Four: Residual Functional Capacity Assessment**

Ms. Padilla raises three errors at step four of the analysis. Ms. Padilla first contends that the ALJ did not meaningfully consider the effect of her obesity in determining her residual functional capacity. (Cl. Moving Br. at 37-38; Cl. Reply Br. at 8). Second, Ms. Padilla argues that the residual functional capacity assessment "limiting [Ms.] Padilla to simple and unskilled jobs is insufficiently specific." (Cl. Moving Br. at 17). Finally, Ms. Padilla claims that the residual functional capacity assessment "fails to account for [Ms.] Padilla's nonexertional mental limitations in the areas of understanding and memory and social functioning." (*Id.* at 23).

At step four, the ALJ must determine, based on all the relevant medical and other evidence in the record what work the claimant is still capable of performing despite any limitations. 20 C.F.R. § 416.945(a)(1). The ALJ's analysis requires a complete assessment of the claimant's physical and mental functional limitations based on relevant medical and nonmedical evidence of a claimant's impairments. *Ibid.* Additionally, if the ALJ decides to reject any evidence, medical or otherwise, he must explain why he is rejecting it to enable meaningful judicial review. *Burnett*, 220 F.3d at 122.

With this preliminary framework in mind, the Court addresses the alleged deficiencies at this step of the evaluative process.

### 1.     Meaningful Consideration of Obesity

At step four, the Court first considers whether the ALJ considered Claimant's obesity when calculating her residual functional capacity.  "[A]n ALJ must meaningfully consider the effect of a claimant's obesity . . . on her workplace function at step three and at every subsequent step." *Diaz*, 577 F.3d at 504; SSR 02-01p, 2002 SSR LEXIS 1, at *3 (adjudicators are instructed "to consider the effects of obesity . . . when assessing an individual's residual functional capacity").  When assessing a claimant's residual functional capacity, an ALJ must evaluate the "effect obesity has upon the [claimant's] ability to perform routine movement and necessary physical activity within the work environment" as the "combined effects of obesity with other impairments may be greater than might be expected without obesity."  SSR 02-01p, 2002 SSR LEXIS 1, at *16-17.

Ms. Padilla argues that "the ALJ's decision gives no indication that he considered Ms. Padilla's obesity in his residual functional capacity."  (Cl. Moving Br. at 37).  In contrast, the government argues that the "ALJ properly considered [Claimant's] obesity as part of his residual functional capacity assessment."  (Def. Opp. Br. at 10).  Specifically, the government relies upon *Douglas v. Astrue*, No. 09-1535, 2011 U.S. Dist. LEXIS 11067 (E.D. Pa. Feb. 24, 2011) (Slip Op.), for the proposition that where "an ALJ expressly considered the effects of Plaintiff's obesity on her claimed impairments at step three, and adopted the opinion of medical sources aware of [Claimant's] obesity, . . . such reliance [is] sufficient to meet the ALJ's responsibilities under SSR 02-1p . . . ."  (*Ibid.*).

The Court finds that Claimant has the better of the argument for the following reasons. First, contrary to the government's position, the Third Circuit has expressly determined that it is insufficient for an ALJ to merely reference or cite to the reports of the claimant's examining physicians when obesity is acknowledged as a severe impairment. *See Diaz*, 577 F.3d at 504. In *Diaz*, the Third Circuit held:

> [a]lthough in *Rutherford* we expressed some willingness to view the reference to the reports of the claimant's examining physicians as constituting adequate, implicit treatment of the issue by the ALJ, *we decline to do so here*, *where* Diaz's *obesity* was urged, and *acknowledged by the ALJ, as a severe impairment* that was required to be considered alone and in combination with her other impairments at step three. Accordingly, the District Court's critical determination—that the ALJ's citation of reports by doctors who were aware of Diaz's obesity sufficed—was error.

*Ibid.* (emphasis added). This Court elects to abide by the mandate set forth in *Diaz*.[5] Second, it is unclear from the ALJ's decision whether obesity was considered in assessing Ms. Padilla's residual functional capacity. Specifically, it is unclear from the ALJ's decision whether he

---

[5] The Court further notes that the district court in *Douglas* distinguished *Diaz* because the ALJ in *Douglas* "*clearly considered and discussed the effects of plaintiff's obesity* [on his claimed impairments]." *Douglas*, 2011 U.S. Dist. Lexis 11067, at *10 (emphasis added). For example, the court highlighted the following portion of the ALJ's decision as it related to the effects of obesity on listed impairments at later stages of the sequential evaluation:

> Examinations of the claimant suggest that he is obese . . . . However, the medical record shows no severe complications resulting from this condition. Notwithstanding, this medically determinable condition must be considered with the claimant's other physical impairments: coronary artery disease; diabetes mellitus; and obstructive sleep apnea. Although no physician has attributed any specific work-related limitations to claimant's obesity, as indicated in SSR 02-1p, obesity may have an adverse impact upon co-existing impairments. For example, obesity may affect the cardiovascular and respiratory systems, making it harder for the chest and lungs to expand and imposing a greater burden upon the heart. Someone with obesity and a musculoskeletal impairment may have more pain and limitation than might be expected from the musculoskeletal condition alone. In addition, obesity may limit an individual's ability to sustain activity on a regular and continuing basis during an eight-hour day, five-day week or equivalent schedule. *These considerations have been taken into account in finding the claimant capable of performing a restricted range of sedentary work.*

*Id.* at *8-9 (emphasis in original). The ALJ's decision here, although thorough, does not contain this level of detail.

- 16 -

eliminated jobs involving climbing ladders, ropes, or scaffolds as a result of her arthritis, gout, or obesity. *See Pelech v. Comm'r of Soc. Sec.*, No. 10-1024, 2011 U.S. Dist. LEXIS 559, at *21 (D.N.J. Jan. 4, 2011) (finding that the "ALJ did consider Claimant's obesity in his [residual functional capacity] decision as he added certain limitations to Claimant's ability to perform light work," specifically "limit[ing] Claimant to jobs that required no climbing of ladders and no frequent crouching, stooping, or crawling" as a direct result of her obesity).  Third, absent an analysis of the impact of Ms. Padilla's obesity on her functional capabilities, this Court is at a loss in our reviewing function.  Consequently, this Court cannot determine whether the ALJ meaningfully considered the effect of Ms. Padilla's obesity in assessing her residual functional capacity.  Accordingly, the ALJ's decision is vacated and remanded to the Commissioner to determine what effect, if any, Ms. Padilla's obesity has on her current level of physical functioning.

## 2.  Limitation to Simple and Unskilled Jobs

Ms. Padilla next contends that the "ALJ's [residual functional capacity] determination that [she] retained the mental capacity for 'simple, unskilled work' fails to accurately and completely capture [her] mental functional limitations . . . ."  Claimant argues that "although Dr. Tillman found that [Ms.] Padilla is moderately impaired in the ability to understand and remember detailed instructions and the ability to accept instructions and respond appropriately to criticism from supervisors, . . . these . . . limitations are never mentioned or discussed in the ALJ's decision." (Cl. Moving Br. at 18).

Ms. Padilla's argument lacks merit.  As previously indicated, these limitations were incorporated into the ALJ's decision.  Indeed, in Section III of the MRFCA, Dr. Tillman elaborated on his Section I conclusions finding that the Claimant "was able to understand and

CRITICAL

execute simple instructions and, despite some difficulty, could execute four-step instructions [as well as] relate adequately with others in the work place." (R. at 18, 20) (citing Exhibit 19F). It is this precise language that the ALJ relied on in his decision. That is, the ALJ unequivocally stated that the Claimant retained the "ability to *understand, carry out[,] and remember simple instructions*, to respond appropriately to *supervision*, coworkers[,] and usual work situations . . . ." (R. at 22) (emphasis added). Thus, it is clear that the ALJ's decision takes into consideration these specific limitations. Therefore, this Court finds that Dr. Tillman's recordings that Ms. Padilla suffered from moderate impairments relating to her ability to understand and remember detailed instructions, as well as her ability to accept instructions and respond appropriately to criticism from supervisors were discussed and incorporated into the ALJ's decision.

Ms. Padilla also claims that "the ALJ's [residual functional capacity] assessment limiting [Ms.] Padilla to 'simple' and 'unskilled' work is insufficiently specific to adequately convey [Claimant's] moderate limitations in concentration, persistence[,] or pace . . . ." (Cl. Moving Br. at 21). Claimant's argument is based upon her reading of *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004) (ALJ's hypothetical limiting plaintiff to simple, one-to-two step tasks did not sufficiently take into account the fact that plaintiff "*often* suffered from deficiencies in concentration, persistence, or pace.") (emphasis in original).

Ms. Padilla's argument is misplaced for the following three reasons. First, Ms. Padilla's case is distinguishable from *Ramirez*. In *McDonald v. Astrue*, the Third Circuit found dispositive the distinction between a claimant who "*often*" suffers from deficiencies in concentration, persistence, and pace from one who suffers only "moderate" deficiencies in approving the ALJ's hypothetical limiting the claimant to simple, routine tasks. 293 F. App'x

- 18 -

941, 946-47 (3d Cir. 2008).  Here, Ms. Padilla was found to suffer no more than a "moderate" impairment in concentration, persistence, and pace; *Ramirez* is therefore distinguishable.

Second, other courts—including the Third Circuit—have held that the phrase "simple and unskilled work" adequately account for moderate limitations in concentration, persistence, and pace.  *See e.g.*, *McDonald*, 293 F. App'x at 946 (holding that a hypothetical limiting claimant to "simple, routine tasks" was sufficient to account for "moderate limitations [in claimant's] ability to maintain concentration, persistence, and pace"); *Menkes v. Astrue*, 262 F. App'x 410, 410-12 (3d Cir. 2008) (hypothetical including a limitation to simple, routine tasks adequately conveyed moderate limitations in concentration, persistence and pace); *Douglas*, 2011 U.S. Dist. LEXIS 11067, at *13 ("The ALJ's hypothetical limiting [claimant] to unskilled work adequately accounted for his moderate limitations in concentration, persistence and pace."); *Padilla v. Comm'r of Soc. Sec.*, No. 09-2897, 2010 U.S. Dist. LEXIS 56853, at *17 (D.N.J. June 9, 2010) (noting that the phrase simple routine jobs would have been adequate to "reflect plaintiff's difficulties in maintaining concentration and pace").[6]  Thus, the ALJ's assessment limiting Ms. Padilla to simple and unskilled work adequately conveyed her moderate limitations relating to concentration, persistence, and pace.

Finally, the Court finds that the record does not reflect the need for a more specific determination regarding Ms. Padilla's residual functional capacity because substantial evidence supports the ALJ's determination that the Claimant is capable of performing simple and unskilled jobs.  Specifically, the assessment of Dr. Tillman found only moderate limitations relating to Ms. Padilla's ability to (1) understand and carry out detailed instructions, (2) to

---

[6] The Court further notes that it sees no distinction between the utilization of "simple and unskilled" when compared with "simple, routine." *See Douglas*, 2011 U.S. Dist. LEXIS 11067, at *12 ("Unskilled work is consistent with simple, routine tasks.").

maintain concentration, (3) the ability to perform activities within a schedule, maintain regular attendance, and be punctual, (4) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace, and (5) the ability to accept instructions and to respond appropriately to criticism from supervisors.[7] (*See* R. at 315-17).  Therefore, because substantial evidence supports the ALJ's determination limiting Ms. Padilla to simple and unskilled jobs, the Court will affirm this particular portion of the ALJ's determination.

### 3.    Limitations of Understanding and Memory and Social Functioning

Ms. Padilla next argues that the ALJ's residual functional capacity assessment is insufficient because it "never discussed" Claimant's "mental limitations in the areas of social interaction and understanding and memory identified by [Dr. Tillman]."  (Cl. Moving Br. at 23).

The Court finds that Ms. Padilla's argument is not supported by the administrative record.  As previously indicated, the ALJ explicitly relied on the opinion evidence contained in Dr. Tillman's MRFCA, which found "that the claimant could perform activities of daily living, was able to understand and execute simple instructions and . . . could execute four-step instructions, [as well as] relate adequately with others in the work place and adapt to changed [sic] in the work place [sic]."  (R. at 20).  These findings incorporate Ms. Padilla's mental limitations relating to social interaction, understanding, and memory.  Thus, Ms. Padilla's assertion lacks merit.

---

[7] *See Galvin v. Comm'r of Soc. Sec.*, No. 08-1317, 2009 U.S. Dist. LEXIS 62930, at *34, 35 (W.D. Pa. Jul. 22, 2009) ("[T]he [c]ourt finds that the record does not reflect the need for a more specific determination regarding [p]laintiff's residual functional capacity.  Rather . . . , substantial evidence supports the ALJ's determination that [p]laintiff is capable of performing simple, routine tasks, . . . such as assessments . . . that [found] only moderate limitations in regard to [p]laintiff's ability to understand and carry out instructions, to interact and respond appropriately to co-workers and changes in the work setting, and in maintaining attention and concentration . . . .").

C.      **Step Five:**

Ms. Padilla raises a litany of arguments claiming that the ALJ erred in his step-five analysis.  Although not persuaded by these arguments, the Court addresses each, in turn, below.

1.      **The ALJ's Reliance on SSR 85-15 instead of Vocational Expert Testimony**[8]

In the Third Circuit, "if the [ALJ] wishes to rely on an SSR as a replacement for a vocational expert, it must be crystal-clear that the SSR is probative as to the way in which the nonexertional limitations impact the ability to work, and thus, the occupational base." *Allen v. Barnhart*, 417 F.3d 396, 407 (3d Cir. 2005).  "While, surely, the Agency can use its rules as a substitute for individualized determination[s]," the court asserted, "there must be a '*fit*' between the . . . specific nonexertional impairments, and the way in which the [SSR] dictates that such nonexertional limitations impact the [occupational] base." *Id.* at 406.

Relying on *Allen*, Ms. Padilla contends that "there is no . . . 'fit' between her specific nonexertional mental impairments and the way in which SSR 85-15 dictates those impairments impact the light occupational base."[9]  (Cl. Moving Br. at 29; Cl. Reply Br. at 10).  Ms. Padilla further argues that the ALJ "fail[ed] to provide any indication of the reasoning behind his reliance on SSR 85-15 let alone make it 'crystal clear that the SSR is probative as to the way the nonexertional limitations impact . . . the occupational base.'"  (*Ibid.*).

---

[8] "Social Security Rulings [("SSR")] are agency rulings published under the authority of the Commissioner of Social Security and are binding on all components of the Administration." *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990) (internal citations and quotations omitted).

[9] Nonexertional limitations are limitations or restrictions that "affect only your ability to meet the demands of jobs rather than the strength demands." 20 C.F.R. § 416.969a(c)(1).  Some examples of nonexertional limitations or restrictions include: (i) mental conditions such as depression; (ii) difficulty maintaining attention or concentration; (iii) difficulty understanding or remembering detailed instructions; (iv) difficulty seeing or hearing; (v) difficulty tolerating some physical feature(s) of certain work settings; or (vi) difficulty performing the postural functions of some work. *Ibid.*

The Court finds Ms. Padilla's arguments to be unavailing.  Contrary to Ms. Padilla's contention, there appears to be a fit between her nonexertional limitations and the way in which SSR 85-15 dictates that such nonexertional limitations impact the occupational base. Specifically, SSR 85-15 provides, in relevant part:

> [t]he basic mental demands of . . . unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and unusual work situations; and to deal with changes in a routine work setting.  A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base.  This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

SSR 85-15, 1985 SSR LEXIS 20, at *11.

In this case, Ms. Padilla's nonexertional limitations, as identified in Dr. Tillman's report and incorporated into the ALJ's decision, include the ability to understand and execute simple instructions and, despite *some difficulty*, relate adequately with others in the work place, as well as adapt to changes in the work place.  (*See* R. at 18, 20) (citing Exhibits 18F, 19F) (emphasis added).  To that end, SSR 85-15 dictates that Ms. Padilla can be expected to perform unskilled work because she does not suffer from a *substantial loss of ability* to meet any of these basic work-related activities, and thus her potential occupational base is not severely limited. Therefore, the Court finds that the ALJ's reliance on SSR 85-15 as an alternative to calling a

vocational expert satisfied the requirements set forth in *Allen v. Barnhart*. 417 F.3d 396 (3d Cir. 2005).[10]

## 2.    ALJ's Alleged Failure to Provide Advance Notice

Finally, Claimant posits that the ALJ's "failure to provide advance notice" of his intention to rely on SSR 85-15 "deprive[d] claimant[] of a hearing grounded in basic notions of fairness, a fact acknowledged by the *Allen* court." (Cl. Moving Br. at 33).

Under Agency Acquiescence Ruling ("AR") 01-1(3), 2001 SSR LEXIS 1, the ALJ cannot exclusively rely on the Medical Vocational Guidelines as a framework for decision making when a claimant has a nonexertional limitation. Before denying disability benefits to a claimant with nonexertional limitations, AR 01-1(3) requires that the ALJ "(1) take or produce vocational evidence such as from a vocational expert, the DOT or other similar evidence (such as a learned treatise); or (2) provide notice . . . [of the intention] to take . . . administrative notice of the fact that the particular nonexertional limitation(s) does not significantly erode the occupational job base, and allow the claimant the opportunity to respond before we deny the claim." AR 01-1(3), 2001 SSR LEXIS 1, at *11, 12. However, AR 01-1(3) is also clear in that:

---

[10] Ms. Padilla raises two additional arguments, each of which the Court finds unavailing. The first of these arguments is that "it is unclear how the ALJ concluded that the abilities to 'respond appropriately to supervision, coworkers and usual work situations' and to 'deal with changes in the work setting . . . can [allow a claimant to engage in] . . . unskilled [work]." (Cl. Moving Br. at 30). As set forth in SSA POMS DI 25020.010, which the Court notes is cited by Claimant, the basic mental demands of unskilled work include the abilities to (1) understand, carry out, and remember simple instructions; (2) make simple work-related decisions; (3) respond appropriately to supervision, coworkers and work situations; and (4) deal with changes in a routine work setting. Accordingly, this argument lacks merit. Ms. Padilla next contends that "without consulting a vocational resource, the ALJ cannot conclude that Padilla's limitations do not rise to the level of substantial loss." (Cl. Moving Br. at 30 n.19). SSA POMS DI 25020.010 3.b. provides, in relevant part, that a "substantial loss" cannot be precisely defined. "In practical terms, an individual has a substantial loss of ability to perform a basic mental activity when he or she cannot perform the particular activity in regular, competitive employment but, at best, could do so only in a sheltered work setting were special considerations and attention are provided. This requires professional judgment on the basis of the evidence [o]n file in each case. Therefore, before making a determination . . . the adjudicator should discuss the case with a *psychiatrist or psychologist* . . . ." SSA POMS DI 25020.010 3.b. (emphasis added). In this case, the ALJ relied on the findings and conclusions of Dr. Wayne Tillman, a clinical psychologist, who reviewed the evidence in this case. Consequently, the Court finds no error in this regard.

"[t]his ruling does not apply to claims where we rely on an SSR that includes a statement explaining how the particular nonexertional limitation(s) under consideration in the claim being adjudicated affects a claimant's occupational job base." *Id.* at *12. In such a decision, the specific SSR must be cited. *Ibid.*

The Third Circuit has also addressed this specific Administrative Ruling, *i.e.*, AR 01-1(3). *See Allen*, 417 F.3d at 407-08. In doing so, it held "[w]e think it only appropriate to give close scrutiny to the ALJ's reliance on a Ruling as satisfying the Commissioner's burden at Step 5 where the Commissioner has not previously advised or argued the clear applicability of the Ruling in advance of the hearing." *Id.* at 408.

Here, the Court is not persuaded by Ms. Padilla's argument. Under the Third Circuit's holding in *Allen*, advance notice is not required in every circumstance. *See Smalls v. Comm'r of Soc. Sec.*, No. 09-2048, 2010 U.S. Dist. LEXIS 72812, at *22 (D.N.J. July 19, 2010) ("The Court . . . finds that, under *Allen*, advanced notice is not unequivocally required in every circumstance."). Instead, when advance warning is not given, the ALJ's reliance on the Ruling is subject to "close scrutiny." *Allen*, 417 F.3d at 408; *see Smalls*, 2010 U.S. Dist. LEXIS 72812, at *22 ("[U]nder the *Allen's* holding, when advanced warning is not given, the ALJ's reliance on the Ruling is subject to close scrutiny.").

Having closely scrutinized the ALJ's decision, the Court finds that the ALJ has satisfied his burden at step five. In this case, the ALJ considered the Claimant's age, education, work experience, and residual functional capacity in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2, and determined that under Rule 202.16 a finding of "not disabled was appropriate." (R. at 21, 22). The ALJ also stated that "[i]f the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational

Guidelines provides a framework for decision-making [sic]." (*Id.* at 22). In his decision, the ALJ concluded that Ms. Padilla "possesse[d] mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and ha[s] never experienced any episodes of repeated decompensation." (*Id.* at 18). In reaching this conclusion, the ALJ expressly refers to the findings of Dr. Tillman that Claimant "could perform activities of daily living, was able to understand and execute simple instructions and, despite some difficulty, could execute four-step instructions, relate adequately with others in the work place [sic] and adapt to changed [sic] in the work place [sic]." (*Ibid.*). The ALJ then relates these findings to the mental impairment provisions in SSR 85-15, 1985 SSR LEXIS 20, specifically citing the basic mental criterion for unskilled work. For these reasons, the Court finds that the ALJ complied with *Allen* as well as AR 01-1(3), 2001 SSR LEXIS 1 by referring to SSR 85-15, which specifically addressed the effects of mental impairments on Ms. Padilla's occupational base, and explained how the SSR related to the record evidence.

## VII.   Conclusion

For the foregoing reasons, the Court vacates the ALJ's judgment and remands this matter to the Commissioner for further analysis in accordance with this Opinion. An appropriate Order shall accompany this Opinion.

s/ Esther Salas
Esther Salas, U.S.D.J.

- 25 -